**Sterling ANDERSON, Appellant,**

v.

**Leon GARZA, Appellee.**

**No. 10556.**

Court of Civil Appeals of Texas.

Austin.

March 19, 1958.

Rehearing Denied April 16, 1958.

William G. Washington, Austin, for appellant.

L. Tonnett Byrd, Austin, for appellee.

GRAY, Justice.

Appellant has appealed from a judgment awarding appellee a recovery of damages for personal injuries sustained in an automobile-truck collision.

On the night of February 5, 1955, at approximately 10 o'clock P.M., Joe Morales was driving his car north along Farm Road 685 between Pflugerville in Travis County and Hutto in Williamson County. The night was dark and it had been raining. Morales met another car and in passing his car hit the shoulder of the road on his right side, it then skidded across the pavement and went in the bar ditch on his left side of the road. Morales was unable to get his car out of the ditch and made his way to Taylor where he contacted friends who voluntarily went with him to get his car. Appellee was one of such friends and drove his own car. One Gabriel, accompanied by others, drove his car. The parties reached the scene where Morales' car was at about 1 or 1:30 o'clock in the morning. Gabriel turned his car around and with the assistance of the others and a chain pulled Morales' car out of the ditch and upon the pavement. Appellee then attempted to turn his car around and in so doing it slipped off the road and into the bar ditch on the right or west side. Gabriel then backed his car around Morales' car to get in position to pull appellee's car out of the ditch. At about this time appellant, driving a milk truck loaded with milk cans, some empty and some filled, approached the scene from the north. The lights of the truck were seen by the parties and Gabriel moved his car up and stopped immediately behind Morales' car. Morales said he then got in his car and proceeded to turn his lights on bright and dim but that appellant did not respond with his lights and that he (Morales) then left his lights on dim. Appellant said that as he came over a hill about one-half mile to the north he saw the lights of a car and said that he thought the car was moving and that he thought it was in the middle of the road; that he alternated his lights on bright and dim but did not get any response and then when he was within 60 or 70 feet of the car he realized it was stopped. He said that he thought there was not enough room for him to pass without getting the wheels of his truck off the pavement and further said:

"* * * as I passed the car my left front wheels of my truck were go-

ing down the side—the right wheel of of the truck was going down the side of the pavement and the left wheel of the truck was up on the pavement. The left front wheel was up on the pavement and my back wheel was angled down as I was trying to get back up on the pavement, with the rear end gradually angling and sliding down to the ditch. The rear end was off of the road.

"Q. Did you see the second car before the accident? A. Well no sir I don't remember seeing the second car. Like it was, it happened pretty quick and as I went down there angling I was watching this other car, the one with them lights you know, the car lights being in my face I didn't see nothing but just that front car's lights, just that one car lights. I didn't realize they had two cars, that them cars was there.

"Q. What was your purpose in angling with your right wheels off of the highway? A. My purpose was after I got around to pull back up on the highway. That was my purpose you know angling like that.

"Q. The only car you saw was the front car with the lights on? A. Yes sir.

"Q. Did you try to miss it? A. Yes sir that's what I was trying to do, to miss it.

"Q. Did any part of your car hit this car that you saw? A. No sir I missed the car I saw on the road, I missed it.

"Q. Did your truck get out of control when you tried to get back on the pavement? A. Yes sir it was out of control because it was slick down there in that mud and I could not control it enough to pull it back upon the road, back up on the highway.

"Q. Were you trying to slow down? A. Yes sir.

\* \* \* \* \* \*

"A. \* \*. \*. the mud and the load I had on the truck is what pulled me off. I didn't drive off; I didn't have to drive that far off to miss the car but after I pulled off, with the load on the back end of my truck, quite naturally it pulled me off the road, you see. That's all I can say."

The van part of appellant's truck collided with the left front of appellee's car with the result that both vehicles were turned over and appellee was injured. He was taken to a hospital in Taylor where he was seen by a doctor, x-rayed, treated and hospitalized.

At the time of the collision Morales' car was parked on the paved portion of the road with Gabriel's immediately behind it and appellee's was in the ditch some 20 or 30 feet to the south.

Appellant estimated that the pavement was 18 or 19 feet wide and that his truck was 8 feet wide. Morales said his car was parked within a foot or a foot and one-half of the edge of the pavement with Gabriel's car immediately behind.

Appellee testified that when he got in the ditch he proceeded to rock his car back and forth in an effort to get it out of the ditch and that the front of his car was about five feet from the pavement. He also said that he "drank eight beers" that night.

The jury found that appellant failed to maintain proper control of his truck; that such failure was a proximate cause of the collision; that the collision was not the result of an unavoidable accident; that appellant was not acting in an emergency and that appellee did not fail to keep a proper lookout. Other findings as to the acts of the parties are: that appellant attempted to drive around the parked cars after he realized that the road was partially blocked; that such attempt was not negligence; that appellant failed to try to stop after he realized the road was partially blocked; that such failure was not negligence; that

appellant did not fail to keep a proper lookout; that the parking of the Morales and Gabriel cars on the paved portion of the road was negligence; that such negligence was not the sole proximate cause of the collision; that appellee failed to show a light from his car that was visible to vehicles approaching from the north; that such failure was not negligence; that Morales left the lights of his car on the bright position; that his so leaving such lights was negligence; that such negligence was not the sole proximate cause of the collision; that the failure of Morales to place a warning signal on the highway was negligence; that such negligence was not the sole proximate cause of the collision; that $118.80 would fairly compensate appellee for hospital bills, doctor bills, expenses for x-rays, drugs and medicines necessarily incurred up to the time of the trial, and that $5,283 would reasonably compensate him for his injuries.

A judgment for $5,401.80 for appellee was rendered.

Appellant first complains that the trial court erred in refusing to submit his requested issues inquiring: if at the time of the collision appellee was driving his car while intoxicated; if appellee drove his car into appellant's truck, and accompanying issues of negligence and proximate cause.

During oral argument appellant was asked if his complaint that appellee was driving while intoxicated related to his driving prior to the time his car was in the ditch and was struck by appellant's truck. He answered "No."

■ It is not necessary for us to discuss the proof or the absence of proof that appellee was "intoxicated" because if it be conceded that appellee violated Art. 802, Vernon's Ann.P.C. and that in so doing he was guilty of negligence per se we think there is no evidence from which a jury could find that such negligence was a proximate cause of the collision. Appellee's car

was in the bar ditch and off of the regularly traveled portion of the road and the question was whether under all of the attending circumstances the collision was such an occurrence as ought reasonably to have been anticipated as a consequence of appellee being intoxicated. 30 Tex.Jur. p. 699, Sec. 47. For the same reasons we think that the elements of foreseeableness and anticipation are absent when appellee's testimony that he "rocked his car back and forth" is considered and especially is this true when the issue as to whether he kept a proper lookout was submitted.

■ Appellee's car was some five feet off of the pavement and was struck by appellant's truck as the result of an unusual occurrence. This being true appellee was not required to anticipate and guard against some person driving into the ditch and colliding with his car. City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667, 27 A. L.R. 927.

The refusal to submit the requested issues was not error.

■ The jury finding that the collision was not the result of an unavoidable accident and that appellant's failure to maintain proper control of his truck was a proximate cause of the collision are sufficient to support the judgment. If there is evidence to support the finding that appellant failed to maintain proper control of his truck the trial court did not err in refusing to disregard the finding.

In addition to appellant's testimony quoted supra he said "at that time of the night I could not see like I could if the weather was good and the lights were down. It is quite natural they would blind me because they were right in my face." He also said that he lost control of the truck.

In Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616, 618, the court said:

"It was the jury's province to weigh all of the evidence and to decide what credence should be given to the whole

or to any part of the testimony of each witness. 'The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable.' Stephenville, N. & S. T. R. Co. v. Shelton, Tex.Com.App., 208 S. W. 915, 916. It follows that the testimony of the taxicab driver that he did not see Lockley's automobile before he hit it, or until he was very close to it, and the inferences that might reasonably be drawn from that testimony were still before the jury to be considered and weighed by them, notwithstanding his testimony that he was blinded by the lights of the automobile approaching him."

■■ Considering all the testimony together with the reasonable inferences to be drawn therefrom it cannot be said that the jury's finding is not supported by the evidence nor can it be said such finding "is against the preponderance of the evidence."

■ Appellant says the trial court erred in not declaring a mistrial because of a conflict in the jury's findings. He neither argues nor points out any claimed conflict and for such reason we do not think it necessary for us to search for a conflict. Neither do we think it necessary for us to speculate as to what the jury found was lacking in appellant's control of his truck.

The evidence as to appellant not being able to see and that his truck skidded was evidence bearing on the issue of unavoidable accident which was answered adversely to appellant. Humble Pipe Line Co. v. Kincaid, Tex.Civ.App., 19 S.W.2d 144, 148, Er. ref.

■ The trial court included and defined new and independent cause in his definition of proximate cause. With this definition to guide them the jury found that appellant's failure to maintain proper control of his truck was a proximate cause of the collision. In Texas it is the law that the question of proximate cause is for the jury. Western Development Corporation v. Simmons, Tex.Civ.App., 124 S.W.2d 414, Er. ref.

■ The fact that appellant was acquitted of other acts of negligence inquired about but was convicted of a failure to maintain proper control of his truck does not present the question of conflict in the jury's findings.

Dr. Lehmberg who treated appellee testified that the charge of $118.80 for hospital bills, doctor bills, x-rays and clinic expenses was reasonable and necessary. He further testified that appellee suffered a compound fracture of his left wrist; that such fracture would be painful for the first few months and that in later years there probably would be pain from traumatic arthritis, and that appellee's ability to work with his left hand in the future would be affected.

Appellee was a farm worker and there is evidence from himself, his employer and from Dr. Lehmberg that his ability to perform farm work is lessened by the fracture. Appellee himself testified that he suffered pain up to the time of the trial and that his capacity to earn money was less after the accident than it was before.

■ We think the award of $118.80 and $5,283 by the jury finds support in the evidence. There was evidence that $118.80 was a reasonable and necessary charge and there was evidence of past and future pain and decreased ability to work and earn money past and future.

In his brief appellant says that the evidence does not show that appellee suffered a fractured wrist in the collision and in support of the statement he says the x-rays taken by Dr. Lehmberg and introduced in evidence are dated February 5, 1955.

Appellee testified that he was knocked out by the collision. The evidence shows that he was taken to the hospital in Taylor and reached there about 3 o'clock in the morning. At that time he was seen by Dr.

Lehmberg who said that appellee "was brought into the hospital with a history of having been in an automobile accident." He was found to have a bump on his head and a fractured wrist. X-rays were made which bear the date February 5, 1955.

During the trial there was no evidence to suggest that appellee may have sustained his injuries in some manner other than in the collision. Neither was there any attempt to explain the date on the x-rays nor to challenge the date they were made.

■ It is our opinion that the facts and circumstances reasonably support the conclusion that appellee sustained the complained of injuries in the collision. Further there was no suspicion cast on the x-rays during the trial and we see no reason to speculate as to why they were dated February 5.

Appellant complains that the trial court erred in refusing to submit his requested issues inquiring if appellee failed to warn appellant that the Morales car was parked on the highway together with the accompanying issues of negligence and proximate cause. In answer to special issues the jury found that the failure of Morales to place a warning signal or flares on the highway was negligence, but that such negligence was not the sole proximate cause of the collision. Thus the issue as to the Morales car being on the highway was submitted. Moreover appellee's car was in the bar ditch and was not on "the paved or improved or main traveled portion of" the highway.

■ If Morales' testimony that he parked his car within a foot or a foot and one-half of the edge of the pavement is accepted, and it is not challenged except by the opinion of appellant, then a violation of Sec. 93(a) of Art. 6701d, Vernon's Ann. Civ.St., was not shown. Sec. 10 of Art. 827a, Vernon's Ann.P.C., contains substantially the same provisions as Sec. 93(a), supra. Further Sec. 121 of Art. 6701d, supra, was not violated by the Morales car because by appellant's testimony the lights were visible for a half mile away. However since appellee's car was not on the highway or its shoulder he was not subject to the provisions of the above sections of Art. 6701d, or Art. 827a, supra.

Under the evidence a directed verdict would not have been proper and the trial court did not err in refusing to render a judgment non obstante veredicto.

We have examined appellant's points and finding no reversible error the judgment of the trial court is affirmed.

Affirmed.