**MID–TEX DEVELOPMENT COMPANY, Inc., Appellant,**

v.

**Mrs. Martha McJUNKIN, a Widow, et al., Appellees.**

No. 16169.

Court of Civil Appeals of Texas.

Dallas.

May 24, 1963.

Rehearing Denied June 28, 1963.

Malone, Seay & Gwinn, Strasburger, Price, Kelton, Miller & Martin, Eugene Jericho, Donald V. Yarborough, Dallas, for appellant.

Robert C. Johnson and Piranio & Fults, Dallas, for appellees.

DIXON, Chief Justice.

This is an appeal from a judgment for damages growing out of a collision involving three motor vehicles at the intersection of Beckley Boulevard and Camp Wisdom Road within the city limits of Dallas, Texas.

Appellee Mrs. Martha McJunkin, a widow, sued appellant, Mid-Tex Development Company, Inc., hereinafter called Mid-Tex, and Vernon Howard Speer. Each of the defendants filed a cross-action against the other.

A jury found that Neal, the driver of the Mid-Tex truck, did not fail to keep a proper lookout, did not fail to make timely application of the brakes, did not drive faster than would be prudent under the circumstances and did not fail to yield the right of way to Speer. However, the jury found that the Mid-Tex driver failed to make a turn to his left which a person of ordinary prudence would have made under the circumstances, which failure was a proximate cause of the collision.

As to Speer the jury found that he was not driving too fast. But it found that he entered the intersection when the truck was so close as to constitute an immediate hazard, and that he failed to keep a proper lookout, failed to apply his brakes, failed to yield the right of way to the truck, which act and failures were each a proximate cause of the collision, but that none of them was the sole proximate cause of the collision.

The trial court refused to submit the defendants' requested contributory negligence issues in regard to Mrs. McJunkin, the plaintiff.

After return of the jury verdict a joint and several judgment for $26,100.00 was rendered in favor of Mrs. McJunkin against Mid-Tex and Speer. A take nothing judgment was rendered against each of the defendants on its cross-action against the other.

Mid-Tex has filed a supersedeas bond in the sum of $30,000.00 payable to Mrs. Mc-

Junkin and Speer. The latter has not filed either a cost bond on appeal or a supersedeas bond. Nevertheless in his brief Speer has presented several cross-assignments of error and prays that the entire case, including his cross-action against Mid-Tex be remanded for another trial.

Mid-Tex has filed a motion asserting that Speer's cross-assignments are not entitled to our consideration, and praying that we dismiss the appeal insofar as Speer attacks that portion of the judgment which provides that Speer take nothing by way of his cross-action against Mid-Tex.

■ Mid-Tex has appealed from the entire judgment, not merely from a part thereof. Since its supersedeas bond is payable to both Mrs. McJunkin and Speer, the latter is entitled to urge cross-assignments of error, though he did not file an appeal bond. Graham & Locke Investments v. Madison, Tex.Civ.App., 295 S.W.2d 234, 242; Dallas Electric Supply Co. v. Branum Co., 143 Tex. 366, 185 S.W.2d 427; 4 Tex. Jur.2d 464. Appellants' motion to dismiss part of the appeal is overruled.

### FACTS

At the time of the collision about 5:00 o'clock P.M. on February 24, 1960 both Beckley Boulevard and Camp Wisdom Road were covered with ice, snow and sleet.

Beckley runs in a general direction of north and south. Camp Wisdom Road runs in a general direction of east and west. The intersection is somewhat wider than either of the roads as it approaches the intersection. A short distance from the intersection Camp Wisdom Road divides on both east and west approaches, with a grass covered island separating its left and right lanes. Near the point of the division, at the time of the collision, there was a sign which read "Keep Right". Just ahead of the intersection was a stop sign.

On the occasion in question a large gasoline truck owned by Mid-Tex and being driven by its employee, Alden E. Neal, was

proceeding north on Beckley. The road at that point is slightly uphill. Neal had delivered a tank of gasoline to La Grange, Texas and was returning to Dallas with his empty truck. The vehicle consisted of a 1953 International Truck Tractor and a Trailmobile Trailer weighing between 18,-000 and 20,000 pounds.

Speer was driving his 1952 Morris automobile in an easterly direction on Camp Wisdom Road. His vehicle was a very small car of foreign make. Camp Wisdom Road is also slightly uphill as it approaches the intersection from the west. Mrs. Mc-Junkin was proceeding south on Beckley in her 1949 Chevrolet automobile.

The testimony is not in accord as to the facts with reference to the collision itself. Neal says that Speer did not obey the stop sign facing him near the intersection, but came through without stopping, then made a left turn onto Beckley going north. There his Morris car started skidding and turning until it faced south. Neal is the only witness who so testifies. He says further that he started to turn to his left in order to avoid colliding with Speer's car, then changed and veered to the right, the left side of his truck colliding with the left side of Speer's car.

Testimony in behalf of Speer is to the effect that Speer stopped at the stop sign on Beckley facing the intersection, but was unable thereafter to start forward because his wheels slipped on the ice. Twice he backed up to make a new try. The third time he went on into the intersection. He claims he had successfully made the left turn onto Beckley and was proceeding in a northerly direction a short distance north of the intersection when the Mid-Tex truck overtook him and ran into him, striking the side of his car.

A passenger in Speer's car testified that Speer's car did not start spinning until it was hit by the truck. There were two other eye witnesses, neither of whom testified that Speer's car started to skid or spin before the collision.

Mrs. McJunkin was well over on her side of Beckley as she was proceeding south approaching the intersection. The collision between the huge truck and trailer and the tiny Morris automobile caused the two pairs of the truck tractor's rear wheels to become detached from the body of the tractor together with their axle, springs and spring hangers. The rear frame of the tractor then dropped to the ground, but the two pairs of detached wheels rolled onward and across the road, striking Mrs. McJunkin's Chevrolet automobile on its left side. The car was greatly damaged and Mrs. McJunkin suffered serious injuries.

This narrative of the facts necessarily will be amplified later in connection with our discussion of appellant's points on appeal.

## OPINION

■ In its first two points Mid-Tex says that the court erred in submitting special issues Nos. 7 and 8, in answering which the jury found that (7) Neal failed to make "that turn to his left which a person of ordinary prudence would have made under the same or similar circumstances," and (8) that such failure was a proximate cause of the collision. In its third point Mid-Tex says that the court erred in overruling its motion for judgment non obstante veredicto, or to disregard the jury's answer to issues Nos. 7 and 8.

There is ample evidence in the record to support the submission of the two issues. Beckley is wide enough to carry four lanes of traffic, two in each direction. The intersection is still wider. There is evidence that the Beckley part of the intersection is at least 270 feet long, the paved part is 50 feet wide at the south end; 45 feet wide at the north end; and 100 feet wide at a point between the two islands.

Neal testified that Speer was near the edge of the east shoulder of Beckley at the time of the collision. There is testimony that Mrs. McJunkin was well over to the right of Beckley looking south. Speer's

Morris is a very small car. It is not near as wide as an ordinary car. There was room for the Mid-Tex truck to pass to the left between Speer's car and Mrs. McJunkin's car. Neal himself says that he started to turn to his left, but changed course and veered to his right. The first three points of appellant Mid-Tex are overruled.

■ Mid-Tex's fourth point asserts error because the court refused to submit the following issue: "Do you find from a preponderance of the evidence, that Alden E. Neal, the operator of the Mid-Tex Development Company Truck at the time of the collision in question, was acting under an emergency?" Submission of the above issue was requested along with an appropriate definition of emergency and an issue inquiring whether after an emergency arose Neal did not exercise that degree of care which a reasonably prudent person would have exercised under the same and similar circumstances.

After a careful study of the record we have concluded that the court did not commit error in refusing to submit the requested issues.

■ Among the necessary elements of imminent peril, or emergency are these: (1) the condition must have arisen *suddenly*; (2) it must have arisen *unexpectedly*; (3) it must not have been proximately caused by the negligent act or omission of the person whose conduct is being inquired about; and (4) the conduct which would constitute negligence under ordinary circumstances must have occurred *after* the emergency arose without giving the person time to deliberate. International & G. N. R. R. v. Neff, 87 Tex. 303, 28 S.W. 283; Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545; Younger Bros. v. Ross, Tex.Civ.App., 151 S.W.2d 621; White v. Munson, 162 S. W.2d 429; Sam v. Sullivan, Tex.Civ.App., 189 S.W.2d 69; Garner v. Prescott, Tex. Civ.App., 234 S.W.2d 704; Ynsfran v. Burkhart, Tex.Civ.App., 247 S.W.2d 907; Goolsbee v. Tex. & N. O. R. R. Co., 150 Tex. 528, 243 S.W.2d 386; Havens v. Guetersloh, 255 S.W.2d 233; Booker v. Baker, Tex.Civ.App., 306 S.W.2d 767; Union Transports, Inc. v. Braun, Tex.Civ. App., 318 S.W.2d 927.

In the light of the undisputed testimony it cannot be said that the hazardous condition confronting the driver of the Mid-Tex truck was either sudden or unexpected. We quote Neal's own testimony:

"Q And when did you first apply your brakes? Any brakes?

"A When I realized there was danger.

"Q Where were you?

"A Within 150 or 175 feet.

"Q Is that when you first saw him?

"A Yes, sir.

"Q When you first saw him, you put on your brakes?

"A. I applied the brakes when I realized there was danger.

"Q Well, I think you have said you realized that when you were 150 to 175 feet?

"A When I saw him approaching the highway, and realized there was danger and when I saw that he was going to come onto the highway, then is when I applied my brakes. I was within some 150 to 175 feet of the intersection; within that distance." (Statement of Facts, pages, 559–560)

If the truck was 150 to 175 feet from the intersection when its driver realized there was danger, it was then still further away from the point where the collision occurred. Neal says that the collision took place in the northeast quadrant of the intersection. This would be at a point north and east of the center of the intersection.

The testimony varies as to the distance from the south end of the intersection to

the point where the collision took place. One witness estimates that the impact occurred 258 feet north of the south end of the intersection; another, 200 feet; another, 170 feet; and another, 120 feet. Taking the minimum distances, if Neal realized the danger when he was 150 feet from the intersection and the collision took place 120 feet north of the south end of the intersection, the impact occurred 270 feet from the point where Neal realized that a dangerous situation confronted him. This would mean that nearly 12 seconds elapsed between the time Neal, traveling 15 miles per hour, realized that he faced a dangerous situation and the time of the collision. He was a truck driver of 25 years experience. He knew that Beckley was covered with ice and snow and therefore that Speer's car might skid. The emergency, if there was one, was neither sudden nor unexpected.

The burden was on Mid-Tex to show that Neal's failure to turn left took place after the emergency arose, thus excusing his failure to turn left. Mid-Tex has not discharged this burden.

Neal testified that he slowed down from 30 miles to 15 miles per hour after he realized the danger, that he had the truck under control up to the time of the collision and that it did not go out of control until after the collision.

The very wording of Mid-Tex's requested issue indicates that if there was an emergency, as Mid-Tex contends, it arose at or very near the time of the collision itself. This is in keeping with Neal's testimony. He testified (and he was the only witness to so testify) that Spear's car skidded and spun around prior to the collision. It had then already passed the center line of Beckley, and had made its left turn into Beckley headed north and had reached a point in the northeast quadrant of the intersection. Neal testified that Spear's car then began to skid and spin and that the truck at that time was too close to the little car to stop.

If this was an emergency it arose *after* Neal had negligently failed to turn left. Prior to the alleged emergency he had continuing opportunities to turn left into Camp Wisdom Road, or to turn to the left of Speer's car which had reached a point on the east side of Beckley. According to his own testimony Neal already knew that danger lay ahead. If Neal had the truck under control right up to the time of the impact, as he says he did, he could have turned to his left had he so willed some time before the emergency arose. His failure to turn to the left was negligence which concurred with Speer's negligence in creating the later emergency.

Mid-Tex's fourth point is overruled.

In its fifth, sixth and seventh points Mid-Tex complains of the court's refusal to submit issues in regard to Mrs. McJunkin's alleged contributory negligence with respect to proper lookout, timely application of the brakes on her vehicle, and failure to steer to her right.

We see no merit in these points. Neal, the driver of the Mid-Tex truck testified that he saw no improper driving on Mrs. McJunkin's part and that she did nothing to contribute to the accident. B. G. Garrison, the police officer, of fourteen years experience, who investigated the accident shortly after the collision, testified as to the position of the vehicles when they came to rest after the accident. He located the point of collision by the debris on the road. He testified that Mrs. McJunkin had absolutely nothing to do with the accident.

While the above testimony cannot be accepted as conclusive we think that the court properly refused to submit the three requested issues for a very good reason indeed: there is no evidence shown in the record to support their submission.

The undisputed testimony is that Mrs. McJunkin was well to the right of the center lane of Beckley moving at a moderate rate of speed. She testified that when she first

saw Speer he was crossing the intersection, but that his car completed its left turn onto Beckley and at the time of the collision was on the right lane of Beckley headed north.

■ Appellant points out that Mrs. McJunkin testified that she does not remember whether she applied her brakes, or turned to her left or right, and, does not know whether Speer stopped at the stop sign, or how close the truck was when Speer came out onto the highway. The burden was on Mid-Tex to prove its allegations of contributory negligence. In the light of the established circumstances of the collision the above negative statements by Mrs. McJunkin are not evidence of any negligent act or omission on her part.

Appellant also relies on this testimony by Mrs. McJunkin:

"A. If I had known there was going to be an accident, I would have made some effort to have gotten out of the way, but I did not."

Appellant further relies on the testimony of Officer Garrison concerning his conversation with Mrs. McJunkin soon after the accident before she was taken away in an ambulance:

"Q Was she still seated in the Chevrolet at the time you talked to her?

"A Yes, sir, she was.

"Q Will you tell the jury substantially what conversation you had with her in regard to the matter?

"A I asked if she could tell me anything about the accident. She said, 'That all of a sudden these wheels were in front of me, I don't know where they came from, I didn't see anything but those big wheels.' "

■ Ordinarily questions of negligence and proximate cause are fact issues, but sometimes when the material facts are undisputed they become questions of law. Texas & N. O. R. Co. v. Burden, 146, Tex. 109, 203 S.W.2d 522; Safeway Stores Inc. of Texas v. Brigance, Tex.Civ.App., 118 S.W.2d 812. After a careful consideration of the testimony in this case we believe that, as a matter of law, Mrs. McJunkin was under no legal duty to foresee the collision in question and the consequences thereof to her. Appellant's fifth, sixth and seventh points are overruled.

In its eighth and ninth points appellant alleges error because the trial court refused to submit issues (with accompanying definitions) inquiring whether (1) Speer failed to have his car under proper control, and (2) whether such failure was the sole proximate cause of the collision.

■ We overrule appellant's eighth and ninth points for two reasons:

(1) The issue as drawn is too general. Blaugrund v. Gish, Tex.Civ.App., 179 S.W. 2d 257 (Aff. by S.C. 142 Tex. 379, 179 S.W. 2d 266); Triangle Cab Co. v. Taylor, 144 Tex. 568, 192 S.W.2d 143.

(2) The controlling issues concerning Speer's conduct were submitted specifically. The jury found the Speer failed to keep a proper lookout, failed to apply his brakes properly, failed to yield the right of way and was so close to the intersection as to constitute an immediate hazard, each of which acts of negligence was a proximate cause of the collision. But it is significant that the jury also found as to each of said acts of negligence, that though it was a proximate cause, it was not the sole proximate cause of the collision. The jury further found that Speer was not negligent in the matter of speed. The submission complied with the requirements of Rule 279, Texas Rules of Civil Procedure.

Appellant relies on Choate v. Meredith, 330 S.W.2d 548; Anderson v. Garza, Tex. Civ.App., 311 S.W.2d 910; and Intges v. Dunn, Tex.Civ.App., 311 S.W.2d 877.

The point of error raised in the above cases challenged the sufficiency of the evi-

dence to support the jury's findings. In none of them was a point of error based on the court's submitting or refusing to submit the issue. In none of them were there jury findings that each of several acts of negligence was not the sole proximate cause.

In its points ten through fifteen appellant complains of the court's refusal to submit issues inquiring whether Speer was negligent in that he approached and entered the intersection at an excessive rate of speed, whether he changed the course and direction of his vehicle when it could not be done in safety; whether he moved his vehicle forward into the intersection when such movement could not be made with safety; whether he attempted to swerve in front of the truck; and whether he changed traffic lanes when such movement could not be made in safety.

In connection with all but one of the above requested issues, an issue was also requested inquiring whether the act inquired about was the sole proximate cause of the collision.

We see no merit in appellant's points ten through fifteen. As to the question of speed the court submitted issue No. 19, which inquired whether Speer was driving faster than a person of ordinary prudence would have driven. The jury answered "No".

■ As to the other requested issues we think that they are substantially covered by the issues that were submitted. Here again the submission meets the requirements of Rule 279, T.R.C.P.

Should we be in error in the foregoing conclusion, the error, as we see it, is harmless. Speer was found to be negligent in several particulars, each of which was a proximate cause, but none of which was the sole proximate cause of the collision. Further findings of negligence and proximate cause against Speer would not have changed the judgment. Appellant's tenth through fifteenth points are overruled.

■ In its sixteenth and last point appellant complains that Mrs. McJunkin's attorney in his argument to the jury made certain mathematical calculations in seeking to demonstrate the amount of damages his client had sustained, using a blackboard in that connection. Appellant presents an excellent brief in support of its contention that this was error, citing and quoting authorities from other jurisdictions.

However, the rule in Texas is well settled to the contrary of appellant's contention. Chemical Express v. Cole, Tex.Civ.App., 342 S.W.2d 773; Louisiana & Arkansas Ry. Co. v. Mullins, Tex.Civ.App., 326 S.W.2d 263; Continental Bus System v. Toombs, Tex.Civ.App., 325 S.W.2d 153; and J. D. Wright & Son v. Chandler, Tex.Civ.App., 231 S.W.2d 786. Appellant's sixteenth point is overruled.

In three points on appeal Vernon Howard Speer asserts that the court erred in (1) refusing to submit his requested issues pertaining to the contributory negligence of Mrs. McJunkin; (2) refusing to grant him a new trial on the grounds that the jury's findings of negligence against him were contrary to the overwhelming evidence; and (3) refusing him a new trial on the grounds that the jury's findings of no damages to him resulted from jury prejudice.

■ Speer's first two points are multifarious and too general to be entitled to our consideration.

As we have heretofore held in this opinion we find no evidence in the record which would warrant the submission of contributory negligence issues pertaining to Mrs. McJunkin. Speer refers to the testimony of Mrs. McJunkin wherein she states that the first time she saw Speer he was coming all the way across the intersection on Camp Wisdom Road. This is not evidence of negligence on her part, especially when it is remembered that her car did not collide with Speer's car. Speer had cleared the crossing of Camp Wisdom Road and was not in Mrs. McJunkin's path when the truck-trailer collided with his car. Mrs.

McJunkin's vehicle never did come into contact with the body of the truck-trailer. It was the rear wheels of the truck which came loose from the truck, rolled across the highway and struck Mrs. McJunkin's car when she was well over on her side of the road.

There was ample evidence to support the jury's findings of negligence on the part of Speer. Officer Garrison testified as follows:

"Q * * * did you talk to the driver of the Morris automobile at the scene of the accident?

"A I did, sir.

"Q And tell the jury the conversation you had with ———— was he still seated in the car?

"A He was in the car when I arrived, yes, sir.

"Q Now tell the jury the conversation you had with Speer at the scene of the accident?

"A He stated, 'I saw the truck coming but thought I could beat it.' "

 If it was error for the jury to find that Speer suffered no damages, it was harmless error, for the findings of negligence against him made the issue of damages immaterial. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334.

The judgment of the trial court is affirmed.

## ON REHEARING

In its motion for rehearing Mid-Tex Development Company asserts that we erred in a statement of fact when we said, "Neal testified that Speer was near the edge of the east shoulder of Beckley at the time of the collision."

Our statement was based in part on the testimony of Neal as follows:

"Q Now then, when he was up here, he was on your extreme right wasn't he?

"A No, sir, not on the extreme right, the extreme right would be on the shoulder of the highway.

"Q Well, according to you he was right on the edge of the shoulder, wasn't he?

"A Near that.

"Q But you had through this whole area, you had approximately 50 feet of paving, did you not? You see the scale here, one inch is ten feet. You have got almost five inches there, you have almost fifty feet of pavement through there, didn't you? I say pavement, I am talking about asphalt?

"A I don't know how far.

"Q Will you take that and lay it up on there and see how many inches?

"A According to the map that is true." (Statement of Facts, pages 625–626) (Emphasis ours)

Appellant says that we erred in a statement of fact when we said, "Neal testified that he slowed down from 30 miles to 15 miles per hour after he realized the danger."

Our statement was based in part on Neal's testimony as follows:

"Q * * * Now with reference to the intersection of Camp Wisdom Road and Highway 77, Mr. Neal, where were you in your truck when you first saw Mr. Speer's car.

"You mean distance?

"Yes.

"I will say approximately 150 to 200 feet.

"And you were traveling how fast at that time?

"Approximately 30 miles an hour. (Statement of Facts, pages, 133–134)

* * * * * *

"Q Could you estimate your speed at the time of the collision for the jury?

"A That would be hard to do, scooting on ice, I suppose 15 or 20 miles an hour." (Statement of Facts, pages 142–143)

Our original opinion quoted testimony from Neal to the effect that he applied the brakes when he realized there was danger and that he was then within 150 or 175 feet of the intersection.

The motions for rehearing of Mid-Tex Development Company, Inc. and Vernon Howard Speer are overruled.