Gentry POWELL, Sr., et al., Appellants,

v.

U. L. UNDERBRINK, Appellee.

No. 15137.

Court of Civil Appeals of Texas, San Antonio.

July 3, 1973.

Rehearing Dismissed as Moot Sept. 19, 1973.

Wiley, Plunkett, Gibson & Allen, Dayton G. Wiley, Jerry A. Gibson, San Antonio, for appellants.

W. W. Watkins, Brown, Kronzer, Abraham, Watkins & Steely, Houston, Gonzalez, Spicer, Gonzalez & Fleming, San Antonio, for appellee.

CADENA, Justice.

Defendants, Gentry Powell, Sr., and Gentry Powell, Jr., appeal from a judgment, following a jury trial, awarding plaintiff, U. L. Underbrink, $93,223 for personal injuries sustained by him when his pick-up truck collided with one of defendants' cows which had escaped from defendants' pasture and wandered onto the highway.

Fourteen special issues were submitted to the jury. In answer to the first five issues, the jury found that defendants were negligent in permitting their cows to run at large on the highway and in failing to maintain a fence adequate to keep the cows within the pasture, and that such negligence was a proximate cause of the plaintiff's injuries. Defendants present no challenge to these findings, nor do they question the finding that plaintiff did not fail to keep a proper lookout.

Defendants' attack upon the judgment is embodied in 12 points which assert: (1) the trial court's refusal to submit issues inquiring whether plaintiff had failed to turn to the left " . . . at such a time that a person using ordinary care would have done," and whether such failure was a proximate cause of plaintiff's injuries (Points 1 and 2); (2) the jury's failure to find plaintiff guilty of contributory negligence in failing to make proper application of his brakes cannot stand because the evidence established such contributory negligence as a matter of law or, in the alternative, such findings are so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust (Points 10, 11 and 12); (3) there is no evidence or, in the alternative, insufficient evidence, to support the jury's award, in answer to Special Issue No. 12, of $71,000 for past and future physical pain and suffering, past and future mental anguish, and past and future loss of earnings (Points 3, 4, 5 and 6); and (4) the evidence is legally and factually insufficient to support the award, embodied in the finding to Special Issue No. 14, of $20,000 for future medical expenses (Points 7, 8 and 9). Defendants do not question the jury's conclusion, in answer to Special Issue No. 13, that plaintiff's reasonable and necessary medical expenses in the past totaled $2,223.

The accident occurred about six o'clock one morning while it was still dark. Plaintiff was proceeding in a southwesterly direction along the highway, at a speed of 50–52 m.p.h., with his lights on high beam. As he reached the crest of a hill and began his descent on the other side, he saw a number of cows about 200–250 feet ahead of him. The cows, which were "all over the road" and in the "right hand bar ditch," were "running up the hill" toward

plaintiff's truck. At this time he did not see any cows in the left "bar" ditch. He described the confrontation with the cows as a "startling" and "frightening" experience, and estimated that it took him one or two seconds to begin applying his brakes. When he realized that he would be unable to stop in time to avoid a collision, he released his brakes and turned sharply to the left into the left ditch. For the first time he saw that there were some cows in the ditch, about 40–50 feet behind the lead cows on the pavement. In order to avoid hitting the cows in the ditch, he turned to the right, back onto the pavement. As he reached the edge of the pavement, one or more cows jumped directly in front of his truck. He then applied his brakes again, but struck a cow, causing his truck to overturn. Plaintiff was thrown clear of the truck.

Plaintiff testified that he left about 50 feet of skid marks on the highway, and that the distance between the beginning of the skid marks and the point at which he struck the cow was 170–200 feet. He estimated that he traveled a distance of about 100 feet in the ditch, without applying his brakes, before he again turned onto the highway in order to avoid hitting the cows in the ditch, and that at the time he struck the cow he was moving at a speed of about 35 m.p.h.

■ Defendants timely, but unsuccessfully, requested the submission of a special issue inquiring whether plaintiff had failed to turn to the left at such time as an ordinary prudent person would have done.

Defendants argue that by continuing to proceed down the highway after he saw the cows, plaintiff caused the cows to scatter into the left ditch, and that if he had turned to the left immediately, instead of attempting to apply his brakes, the cows would have remained on the paved portion of the highway. We find no evidence in the record which tends to indicate that the approach of plaintiff's vehicle caused the cows to scatter or to leave the pavement and go into the left ditch.

Defendants call our attention to Mid-Tex Development Co. v. McJunkin, 369 S. W.2d 788 (Tex.Civ.App.—Dallas 1963, no writ). In that case, one of the defendants was proceeding in a northerly direction along Beckley Street, a four-lane street, while plaintiff was traveling south on the same street. A vehicle operated by a second defendant turned into Beckley Street from an intersecting street, entering the same north-bound lane in which the first defendant's truck was proceeding. The first defendant applied his brakes but was unable to avoid striking the vehicle of the second defendant. As a result of this collision, the rear wheels of the truck became detached, and one of the wheels rolled onward and across the street, striking plaintiff's south-bound vehicle. The evidence was held sufficient to support a jury finding to the effect that the first defendant, the driver of the truck, failed "to make 'that turn to his left which a person of ordinary prudence would have made under the same or similar circumstances' . . . ." 369 S.W.2d at 791.

■ *McJunkin* is not controlling here. We recognize, of course, the common law duty of a driver to turn his vehicle in order to avoid a collision. 1 Texas Pattern Jury Charges, Section 5.05, comment. In *McJunkin,* the driver failed to turn in order to avoid colliding with the vehicle which had suddenly appeared in his path and, as a result of such failure to turn, he collided with such vehicle. That is, the driver failed to take reasonable action to avoid the danger which was apparent to him. The *McJunkin* holding would, perhaps, be applicable here if plaintiff in this case, instead of turning to the left, had continued straight ahead and hit one of the cows on his side of the highway. But in this case, plaintiff took the action necessary in order to avoid the danger which was known to him. He turned to the left and succeeded in avoiding a collision with the cows on the highway. After he had successfully avoided the known danger, he was confronted with a new danger which

also resulted from defendants' negligence —the presence of cows in the left ditch. The presence of this second danger was unknown to plaintiff until after he had avoided the known danger, and there is no evidence which would support the conclusion that plaintiff should have known of such second danger.

Since defendants' first point, complaining of the trial court's refusal to submit the "turn to the left" issue, is without merit, defendants' second point, asserting that the court erred in failing to inquire whether plaintiff's failure to turn to the left sooner was a proximate cause of plaintiff's injuries, must also be overruled.

█ By their tenth and eleventh points, defendants argue that the finding that plaintiff did not fail to make proper application of his brakes cannot stand because the evidence establishes as a matter of law that plaintiff did so fail or, in the alternative, that the jury's answer to the special issue is contrary to the overwhelming weight and preponderance of the evidence.

Special Issue No. 10, relating to the application of brakes, is somewhat lacking in clarity. It is impossible to determine, from the language of the issue, whether the inquiry concerns proper application of brakes when plaintiff first saw the cows on the highway, before he turned to the left; or whether it relates to plaintiff's failure to apply the brakes after he steered his vehicle into the ditch; or whether it relates to proper application of brakes after the cows jumped in front of plaintiff's vehicle following his turn to the right to get back on the pavement. Cf. Tuloma Gas Products Co. v. Lehmberg, 430 S.W.2d 281 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.).

While it may be reasonably argued that, under the evidence, the jury might have properly found that plaintiff failed to make a proper application of his brakes on one or the other "occasion in question", we cannot say that the evidence compels that conclusion, or that the evidence establishes improper application of brakes as a matter of law.

Nor can we say that the jury's failure to find improper application of brakes is contrary to the overwhelming weight and preponderance of the evidence. With reference to plaintiff's conduct while still on the highway, the evidence justifies the conclusion that, under all the circumstances, plaintiff did not delay unduly in applying his brakes. With respect to plaintiff's failure to apply his brakes while in the ditch, there is no evidence indicating that plaintiff had sufficient time to bring his vehicle to a stop before hitting one of the cows in the ditch. Further, there is testimony to the effect that, when plaintiff made his decision to turn to the right instead of attempting a sudden stop while traveling in the ditch, there was ample unobstructed space on the right to enable plaintiff to avoid a collision by turning in that direction. There is nothing to indicate that, after plaintiff turned to the right and some cows suddenly jumped in front of his vehicle, plaintiff did not promptly apply his brakes. The evidence does, perhaps, raise an issue of fact concerning proper application of brakes, but that issue was submitted to the jury and resolved in favor of plaintiff.

Defendants call our attention to plaintiff's testimony that, on a prior occasion, while traveling at a speed of 50–55 m.p.h., he stopped the truck within 150 feet when a vehicle suddenly "pulled out" in front of him. However, plaintiff testified that on such occasion, he had "anticipated" that the car would pull out in front of him, and that the stopping distance of 150 feet represented the distance his truck had traveled after he applied the brakes and before coming to a stop.

Point 12 asserts that a negative answer to the question (Special Issue No. 11) inquiring whether plaintiff's failure to make a proper application of his brakes was a proximate cause of his injury would have been contrary to the weight and preponderance of the evidence. Special Issue No. 12

was conditionally submitted, requiring an answer only if the jury found improper application of the brakes. Since the jury failed to make an affirmative finding in response to the application of brakes issue, and since we have held that such negative finding was justified by the evidence, Point 12 presents no ground for reversal.

■ Points 3, 4, 5 and 6 assail, on the basis of legal and factual insufficiency of the evidence, the award, in answer to Special Issue No. 12, of $71,000 as compensation for past and future physical pain and mental anguish and past and future loss of earnings.

The medical testimony is to the effect that plaintiff sustained fractures of two ribs and "a mild compression fracture of the left lumbar." X rays revealed a narrowing of the disc space between the fifth lumbar vertebra and the sacrum. While the doctor opined that this was probably "an old pre-existing condition that never gave any symptoms," he testified that the accident aggravated this condition and caused it to become extremely painful. Plaintiff remained in the hospital for six weeks, during which time, according to the doctor, he experienced pain every time he took a breath, was hardly able to turn in the bed, and could get out of his hospital bed only with great difficulty, due to "pain in his low back and numbness down both legs and down to both feet." According to the doctor, at the time of trial, some 38 months after the accident, plaintiff was "still hurting extensively from the accident." The medical testimony supports the conclusion that plaintiff suffered a "very serious" injury and that he would continue to experience pain in the future, which pain could be alleviated to some extent by medication, physical therapy, and the use of a back brace. The doctor added that little relief would result from surgery.

After plaintiff was released from the hospital, he spent several months bedridden at his home. He was unable to drive for 10 months after the accident, and when he first drove a vehicle in order to keep an appointment with his doctor, he had to stop twice because of the pain. If he is sitting or lying down and gets up, he is forced to wait for a short time until the feeling returns to his legs before he is able to walk.

Plaintiff testified that he had experienced continuous pain and that, at the time he testified, more than three years after his injury, he was still experiencing great pain. Prior to the accident, plaintiff was a strong and agile man, capable of doing heavy manual labor. Since the accident he is noticeably weaker, walks with a limp and sometimes, when he is walking, his leg "gives way." Several witnesses stated that plaintiff is unable to engage in physical labor or recreation, that he is unable to do the amount of yard work and repairs around his home that he did previously, and that he constantly complains of pain.

Plaintiff testified that the constant pain and his inability to find gainful employment cause him to worry a great deal and keep him from sleeping at night.

At the time of the accident plaintiff was averaging $150 a week, or $7,800 a year, as foreman of a work gang. He testified that, despite his supervisory capacity, it was necessary for him to do much physical labor. During the 38 months intervening between the time of the accident and the time of trial, plaintiff had been unable to find gainful employment. This would represent an actual loss of earning of $23,700.

At the time of trial, and for some months previously, plaintiff, who had completed one year of college in his earlier years, had returned to college, hoping to obtain a teacher's certificate. This was made possible by financial help which he received from welfare agencies.

Defendants urge, in connection with plaintiff's claimed diminution of earning capacity, that the fact that he attends classes at college two days a week, driving to and from school, walking around the campus, and sitting in classes demonstrates that he could sell insurance, as he did for some ten years prior to the time he became

foreman of a work gang in 1968. The evidence shows that, even after ten years of selling insurance, his average annual income did not exceed $6,000, or $1,800 less than he was earning at the time of his injury after being a work foreman for only a few months. The evidence demonstrates that selling insurance involves a great deal of driving and walking. The medical testimony is to the effect that plaintiff is unable to engage in heavy manual labor, which is the type of employment which has yielded him the greatest income in the past.

At the time of trial plaintiff's life expectancy was 19.3 years.

We cannot say that the evidence outlined above is legally or factually insufficient to support an award of $71,000 for physical pain and suffering, mental anguish and past and future loss of earning capacity.

Points 3, 4, 5 and 6 challenge the legal and factual sufficiency of the evidence to support the answer to Special Issue No. 12, awarding plaintiff $20,000 for future medical expenses.

█ In order to recover for future medical expenses, a plaintiff must show a reasonable probability that such expenses will be necessary in the future. Fisher v. Coastal Transport Co., 149 Tex. 224, 230 S.W.2d 522 (1950); V. J. Keefe, Inc. v. Huddleston, 459 S.W.2d 224 (Tex.Civ.App. —Beaumont 1970, no writ).

█ There is ample evidence to support the conclusion that in reasonable probability plaintiff will incur medical expenses in the future in order to alleviate pain and lack of motion in his back. Insofar as the probable reasonable amount of such medical expenses, the medical testimony is to the effect that plaintiff "will need less than $200.00 annually" for medication. This prediction was based on the fact, to the doctor's knowledge, plaintiff did not like to take medication and preferred "to bear his pain stoically," and that the doctor did not think that plaintiff will resort to physical therapy. The doctor added that,

"At the worst, if he became bedridden due to aggravation of his symptoms, and required physical therapy, I would think that the upper limit of the amount required would not go over $2,000 annually." The doctor added that the likelihood that plaintiff would need surgery in the future "will be less than fifty percent."

At the time of trial, plaintiff had incurred medical and hospitalization expenses in the amount of $2,223. This amount, which represented his total medical expenses during the 38 months intervening between the date of the injury and the time of trial, included the cost of his hospitalization and the total amount of doctors' bills.

Even if the evidence is viewed in the light most favorable to plaintiff, the most that can be said is that plaintiff will probably need "less than $200" annually. The other figure mentioned by the doctor, which he said "would not go over $2,000" per year is, at best a surmise on the part of the doctor grounded on the assumption that the "worst" would happen. At best, it is a statement of possibility, rather than probability, and there is nothing in the record to indicate that plaintiff's condition will probably take a turn for the worse.

The only testimony of probative force, then, is to the effect that plaintiff will probably need "less than $200" per year in the future for medical expenses. Such evidence furnishes no basis for arriving at any fixed amount. We hold that there is no evidence to support the award of $20,000 for future medical expenses. Cf. City of Dallas v. Pierson, 450 S.W.2d 99 (Tex.Civ.App.—Dallas 1970, no writ).

The judgment of the trial court is reformed to provide that plaintiff, U. L. Underbrink, recover from defendants, Gentry Powell, Sr., and Gentry Powell, Jr., the sum of $73,223. As so reformed, the judgment of the trial court is affirmed. One fifth of the costs of this appeal are taxed against plaintiff, and the remaining four fifths to be paid by defendants.