**V. J. KEEFE, INC., et al., Appellants,**

**v.**

**Rita HUDDLESTON, Appellee.**

**No. 7168.**

Court of Civil Appeals of Texas, Beaumont.

Oct. 22, 1970.

Beckmann, Stanard, Wood & Keene, San Antonio, for appellants.

Brown, Kronzer, Abraham, Watkins & Steely, Houston, for appellee.

STEPHENSON, Justice.

This is an action for damages for personal injuries received in a collision between an automobile driven by plaintiff, Rita Huddleston, and a cement mixing truck owned by defendant, V. J. Keefe Company, and operated by its employee, defendant, Theodore Alderetto. Trial was by jury and judgment was rendered for plaintiff upon the issues. The parties will be designated here as they were in the trial court.

This collision occurred on Interregional Highway 10 in the City of Balcones Heights, a suburb of and completely surrounded by the City of San Antonio. Both vehicles were being driven in a northerly direction in the center lane of the three north-bound lanes of the divided highway, at the time of impact. The crucial fact issue was submitted in the first special

issue, inquiring whether or not defendant's truck was driven from the left lane into the center lane just before the collision. The jury answered that issue in the affirmative, and also found: That such movement was negligence and a proximate cause of this collision. That the defendant driver failed to give a proper signal of his intention to change lanes, and that this was a proximate cause of the collision. The jury declined to find that plaintiff failed to keep a proper lookout, or failed to apply her brakes as an ordinary prudent person. The jury found that plaintiff failed to turn into another lane, but did not find that such failure was negligence. Plaintiff sought damages in her petition for the death of her 20-month old daughter, but this element of damage was not included in the charge of the court.

Defendants' first series of points attacks the findings of the jury as to the defendant, as set forth above, as being contrary to the great weight and preponderance of the evidence. Defendants' second series of points makes the same contentions as to the failure of the jury to find plaintiff guilty of negligence as set forth above. We consider all of the record in passing upon these points.

The uncontroverted evidence shows that this collision took place about 7:00 o'clock, a. m., on the 10th day of June, 1966, in the daylight with clear weather, good visibility and on a dry, paved roadway. Each of the three north-bound lanes were 12 feet in width. This roadway was straight and uphill at the point of impact. Plaintiff had just entered I. H. 10 from the access road at Wonderland Drive. This on-ramp is 719 feet in length and proceeds as a fourth lane and gradually angles into I. H. 10, with the angle ending 384 feet before the point of impact. The defendant driver got on I. H. 10 at Fredericksburg Road, which was apparently some distance from the place of this collision. According to all of the testimony, no other traffic was involved in this collision.

Plaintiff gave the following testimony: That she drove her car up the feeder road on to the expressway at a speed of around 40 miles per hour. She moved smoothly into the center lane as soon as she could. When she got into the center lane, she first saw the cement truck up ahead to her left in the left lane. The truck was four to five car lengths ahead of her when she first noticed it. She increased her speed to 50 to 55 miles per hour as she continued ahead in the center lane. She was watching the road ahead, and did not see the defendant driver give any signal, and did not see his brake lights come on. That she was driving faster than the truck and knew that she would pass it. When she was about a car length behind, the truck moved into her lane. "It was just so quick, everything was so sudden." She applied her brakes, and everything was vague and blurry. As the truck came over into her lane she did not have time to sound her horn or turn to her right. The truck was entirely in her lane when she tried to stop her car.

The defendant driver testified: The truck he was driving weighed 28,000 pounds empty. It was loaded with seven yards of concrete at the time of this collision, which weighed 48,000 pounds. The truck had eight wheels in back and two in front. He was traveling in the middle lane at the time of the collision and had not been in the left lane. He had been driving between 30 and 35 miles per hour and was climbing a hill which slowed the truck down a little bit. He did not see the Huddleston car before the collision. The first he heard was a bump in the back of the truck. The truck was equipped with rear-view mirrors on each side. He gave no signal of any kind before the collision, and had not applied his brakes. The truck travelled 50 feet after the collision and stopped in the middle lane.

Jess Heard, called by defendant, testified: He was a police detective investigator for the San Antonio Police Department. He came driving up behind the

collision. The car was stopped in the middle lane, and the truck was moving forward and came to a stop in the middle lane about 125 to 150 yards ahead of the car. He saw the brake lights on the truck and presumed it was coming to a stop. He saw no skid marks left by either vehicle. All of the front end of the car was damaged, both right and left front.

Robert A. Pryor, Jr., called by defendant, testified: He was the Chief of Police of Balcones Heights and investigated this accident. Both vehicles were in the center lane, all aligned, with neither at an angle when he arrived with the truck about 250 feet ahead. He found no skid marks, and the point of impact was in the center lane. Forty-five miles per hour was the minimum speed and sixty the maximum speed at the place of this collision. The whole front end of the car had been damaged, both right and left.

Charles H. Ruble, called by defendant, testified: He was a Captain with the San Antonio Police Department and an accident consultant on his own time. He made a survey of the scene of this accident and prepared a sketch which was admitted in evidence. The distances mentioned in this opinion showing the point of impact, are taken from this sketch. Such point of impact was in the center lane, with the vehicles in direct alignment at the time of impact. If the vehicles had been at an angle at the time of impact, the damage would have not been evenly distributed as he found it to be, and they would not have come to a stop as they did. That the truck at 30 miles per hour would travel 44 feet per second, and the car at 50 miles per hour would travel 73 feet per second. The average perception time and reaction time are each three-fourths of a second, or a total of one and one-half seconds.

Defendants argue that from the physical facts the accident could not have occurred as plaintiff contends. That if plaintiff's car traveling 50 miles per hour was one-car length behind the truck traveling 30 miles per hour at the time the truck began to change lanes, she would overtake the truck in one-half second and the truck would have travelled only 22 feet and could not have been completely aligned in the center lane at the time of impact.

There is no exact mathematical formula that can be applied to the situation before us. There are too many variables. Plaintiff's speed was estimated at between 50 and 55 miles per hour, and the defendant driver's speed was estimated at 30 to 35 miles per hour. The evidence does not show that either driver looked at the speedometer or that the speed was clocked as by radar and the exact speed of neither of the vehicles was established conclusively. Then the testimony of plaintiff, after admitting that she was not good at "saying" or measuring distances on several occasions on cross-examination, gave as an estimate, that the truck was one-car length ahead of her when it began coming over into her lane. Then in her testimony she pointed out chairs in the courtroom as representing the distance but there is no showing that anyone then measured the distance to such chairs. Ruble's testimony showed that at a 10-degree angle the truck could have crossed the 12 feet from one lane to the other by traveling 66 feet, which would require one and one-half seconds for a vehicle driving 30 miles per hour. It is noted that one and one-half seconds is the average perception and reaction time, and that the driver of a following vehicle would just be getting a foot on the brakes. Only two witnesses gave testimony as to whether the defendant driver changed lanes before this collision, the plaintiff and the defendant driver. All of the other testimony establishes no more than both vehicles were in the same lane at the time of impact. The jury was the trier of facts, and agreed with plaintiff's version as to how this collision occurred. Evidence supports the findings of the jury. We do not find their answers to the issues to be clearly wrong or manifestly unjust.

Defendants next contend it was error for the jury to be permitted to consider physical pain and mental anguish, and loss of capacity to work and earn money in plaintiff's general damage issue because there are not pleadings to support it. This point is overruled. The objections by defendants to the court's charge are not sufficiently definite to preserve this point. Rules of Civil Procedure, rule 274. No mention is made in defendants' objections that these elements of damages were not supported by the pleadings. Failure on the part of defendants to make such objections, that is, no pleadings, constitutes a waiver, and the error is not preserved. Aetna Casualty & Surety Co. v. Clark, 427 S.W.2d 649 (Tex.Civ.App.—Dallas, 1968, no writ); Minugh v. Royal Crown Bottling Co., 267 S.W.2d 861 (Tex.Civ.App.—San Antonio, 1954, error ref.).

It is contended in the next series of points that there were no pleadings and no evidence to support the inclusion of the elements of plaintiff's damages, physical pain in the future, mental anguish in the future and loss of capacity to work and earn money in the future, in the general damage issue. Also, that the verdict of the jury awarding plaintiff damages for these elements is contrary to the great weight and preponderance of the evidence. It is noted the finding of the jury that plaintiff suffered $50,000.00 in general damages is not under attack as being excessive. The matter of failing to plead certain elements of damages is taken care of in the preceding point of error.

The trial court, in submitting the future elements of damages, confined the jury to those that would, "in all reasonable probability" be incurred. Texas has long followed this "reasonable probability" rule for future elements of damages for personal injuries. Fisher v. Coastal Transport Co., 149 Tex. 224, 230 S.W.2d 522 (1950). It is also well established in Texas that from the nature of a collision, the time spent in the hospital, the treatment by doctors and the medicine used and the nature of the injuries sustained at the time of the collision, it may be implied that physical pain and mental anguish was suffered. Austin Road Company v. Thompson, 275 S.W.2d 521 (Tex.Civ.App.—Fort Worth, 1955, error ref., n. r. e.); Dallas Railway & Terminal Co. v. Enloe, 225 S.W.2d 431 (Tex.Civ.App.—Dallas, 1949, error ref., n. r. e.). This rule has also been applied to future physical pain and mental anguish. See Kingham Messenger & Delivery Service, Inc. v. Daniels, 435 S.W.2d 270 (Tex.Civ.App.—Houston, 14th, 1968, no writ).

This collision occurred June 10, 1966, and the case was tried beginning October 20, 1969. The evidence showed the pain and discomfort to plaintiff in many forms had persisted over this three years and four months period. As to the seriousness of the original injuries, the evidence shows: The pictures and other evidence reveal the severity of the blow with which plaintiff's car collided with defendant's truck. The front end of the car was shoved back and plaintiff was pinned between the steering wheel and the seat. The first person to arrive was the witness, Jess Heard, who found plaintiff unconscious. He and the defendant driver pushed and pulled the seat back to release plaintiff. He found plaintiff's right leg was broken and her foot was twisted back up against her leg. Plaintiff was carried to the hospital by ambulance and taken to the emergency room. At that time, she was found to be without blood pressure and pulse. She was resuscitated and then taken to surgery immediately. An exploratory laparotomy and right thoracotomy was performed by Dr. T. G. Glass. The abdomen was opened through a long incison from the xyphoid to the symphysis pubis and about six pints of blood were encountered free in the peritoneal cavity. Then a large six to eight inch laceration of the right lobe of the liver was found to be bleeding profusely. The cortal cartilages at the eighth and ninth ribs were divided and the incision ex-

tended and the diaphram opened so the liver could be sutured. Drains were then inserted and the incision was closed. The thoracotomy was performed June 20, 1966. A large catheter was inserted and old dark blood removed. On that same date, Dr. N. Stool, the orthopedist performed surgery on the right ankle. A screw was used to transfix the fracture. Plaintiff was hospitalized from the date of the accident until July 5, 1966. November 20, 1966 she reentered the hospital and an x-ray revealed a fracture of the left knee, and Dr. N. Stool performed an arthrotomy. She was discharged November 25, 1966. Plaintiff used crutches for three or four months, and the screw in her ankle was removed after six months. At the time of this trial (three years and four months after the collision) plaintiff was still suffering severe headaches, bodily disfigurement, swelling and pain in the knee and ankle, and difficulty in breathing. These points are overruled.

■ Defendants contend it was error for the trial court to instruct the jury to base its findings as to the general damage issue upon those elements which were the direct and proximate result of the *occurrence* in question. Defendants' objections were directed to paragraphs (a) and (b) under the general damage issue reading as follows:

"(a) Such physical pain, if any, and mental anguish, if any, which you believe from a preponderance of the evidence that Rita Huddleston has suffered since June 10, 1966, up to the time of this trial, as a direct and proximate result of the occurrence in question.

"(b) Such future pain, if any, and mental anguish, if any, which you believe from a preponderance of the evidence that Rita Huddleston, in reasonable probability, will suffer in the future from and after this date as a direct and proximate result of the occurrence in question."

Defendants' objections to the court's charge were identical as to (a) and (b) and read as follows:

"1. Defendants object and except to the instructions in paragraph 'a' ['b'] following Question No. 13, as such instructions are not limited to the injuries received by the plaintiff Rita Huddleston as a direct and proximate result of the occurrence of June 10, 1966, and such instruction would permit the jury to speculate and take into consideration other elements of mental anguish other than that resulting from the physical injuries which she herself received."

It is argued that their charge would permit the jury to consider and allow plaintiff to recover damages for the wrongful death of the daughter. Defendants say the charge should have limited the jury in its consideration to those damages which were the result of injury to plaintiff, and not to the occurrence in question. The point is overruled. The instruction accompanying the damage issue is couched in terms ordinarily used by our trial courts in submitting such issue (see, Texas Pattern Jury Charges, § 11.03). We note, particularly, that the defendant did not mention the deceased daughter and the fact that the jury might consider the mental anguish of plaintiff from that source. Undoubtedly, defendant could have made the objection clearer by including a specific reference to the death of the daughter in the objection. Defendant did not request a specific instruction with reference to the death of the daughter and may not now be heard to complain. Rule 279. See Blaugrund v. Gish, 142 Tex. 379, 179 S.W.2d 266 (1944); Missouri Pacific Railroad Co. v. Kimbrell, 160 Tex. 542, 334 S.W.2d 283 (Tex.Sup., 1960); Texas Employer's Insurance Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000 (1944); Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312 (1943).

■ In any event, we do not consider this action by the trial court to be rever-

sible error under Rule 434. There is no evidence in the record that plaintiff suffered mental pain and anguish because of the death of her daughter. The way plaintiff testified as to the death of the daughter was to answer "no" to a question inquiring whether she saw her daughter again after the collision. We assume plaintiff's attorney did not argue the death of the daughter in connection with these damage issues because there is no point of error as to improper argument. Further, as mentioned above, there is no point of error that the damages are excessive. We do not find this action of the trial court amounted to such a denial of the rights of defendants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. We find no error in the other points of error.

Affirmed.