Mark Kevin HUGHETT, Appellant,

v.

John Steven DWYRE, Appellee.

No. 9290.

Court of Appeals of Texas, Amarillo.

Nov. 12, 1981.

Rehearing Denied Dec. 3, 1981.

Vickers, Purdom & Nelson, Thomas J. Purdom, Lubbock, for appellant.

A. W. Salyars and P. C. Simek, Lubbock, for appellee.

Before REYNOLDS, C. J., and DODSON and COUNTISS, JJ.

DODSON, Justice.

The plaintiff, John Dwyre, brought this action against the defendant, Mark Hughett, for damages resulting from an automobile-bicycle collision. On the jury's verdict, the trial court rendered judgment against the defendant in the amount of $34,246. He appeals from the judgment. We affirm.

The accident occurred in the intersection of Fourth and Bangor Streets in Lubbock, Texas. Fourth Street is a four-lane, two-way street running east and west. Bangor Street is a two-lane, two-way street running north and south. The streets intersect to form a "T," so that all traffic going north on Bangor must turn either left (westbound) or right (eastbound) onto Fourth Street after first stopping at a stop sign. The undisputed evidence shows that the plaintiff was traveling east on Fourth Street on his bicycle, about three or four feet north of the south curb. The defendant was traveling north on Bangor Street. He stopped at the stop sign, proceeded several feet beyond the sign, and had entered three or four feet into the intersection to turn left when the collision occurred.

On appeal, asserting sixteen points of error, the defendant attacks: (1) the trial court's refusal to submit an issue on whether he committed the act of failing to yield the right-of-way; (2) the legal and factual sufficiency of the evidence to support the jury's answer to the issue concerning future medical expenses; (3) the admissibility of certain expert testimony on the probability of future medical expenses; (4) the legal and factual sufficiency of the evidence to support the jury's answer to the issue concerning loss of past earnings; (5) the legal and factual sufficiency of the evidence to support the jury's answer to the issues concerning the loss of future earnings; (6) the admissibility of testimony by the plaintiff as to the rank he would have attained in the Air Force Reserves; and (7) the trial court's refusal to grant defendant a new trial as the result of jury misconduct.

In response to special issue number three the jury found that the failure of the defendant to yield to plaintiff was negligence; and in response to special issue number four the jury found that the failure of the defendant to yield to plaintiff was a proximate cause of the collision. In each of these issues, the trial court assumed that the defendant failed to yield the right-of-way to the plaintiff. In his first five points of error, the defendant contends that the trial court erred in failing to submit an issue inquiring of the jury whether he failed to yield the right-of-way to the plaintiff. In support of his position, the defendant maintains that the trial court committed error for two reasons: (1) the defendant's failure to yield was a disputed fact issue raised by the evidence; and (2) the manner of submitting the issues constituted a direct comment upon the weight of the evidence.

Under Rules 277 and 279 of the Texas Rules of Civil Procedure, the trial court is not required to submit an issue on an undisputed fact. *See Sullivan v. Barnett,* 471 S.W.2d 39, 44 (Tex.1971), and *Wright v. Vernon Compress Co.,* 156 Tex. 474, 296 S.W.2d 517, 522–23 (1956). In this instance, special issues three and four are identical to the suggested issues set forth in 1 State Bar of Texas, Texas Pattern Jury Charges 6.01 (1969). The comments concerning those issues contain the following explanatory passage at 163:

FAILURE TO YIELD. No issue is suggested inquiring whether [the defendant] failed to "yield and grant the privilege of immediate use of such intersection" because usually it is not disputed that he did proceed into the intersection and because under Section 71(e) of Article 6101d it is presumed that he failed to yield. If there is affirmative evidence that he did not so proceed, a separate issue presenting this question should be submitted.

Section 71 of Tex.Rev.Civ.Stat.Ann. art. 6701d (Vernon 1977) provides:

(a) the driver of a vehicle approaching the intersection of a different street or roadway *shall stop, yield and grant the privilege of immediate use of such intersection in obedience to any stop sign,*

yield right-of-way sign or traffic control device erected by public authority, and after so stopping, *may only proceed thereafter when such driver may safely enter the intersection without interference or collision with traffic using such different street or roadway.*

\* \* \* \* \* \*

(e) A driver obligated to stop and yield the *right-of-way in accord with Sections (a), (b), (c), (d), and (d–1) of Section 71, who is involved in a collision or interference with other traffic at such intersection is presumed not to have yielded the right-of-way as required by this Act.* (Emphasis added).

Section 14(a) of Article 6701d defines "intersection" as "[t]he area embraced within the prolongation or connection of the lateral curb lines."

In his brief, the defendant states a number of times that his failure to yield is a disputed fact issue, but he does not direct the court's attention to any evidence from which a jury could find that he did not fail to yield, nor have we found any such evidence. The undisputed evidence establishes that the defendant was in the intersection when he collided with the plaintiff. The only dispute is how *far* into the intersection the defendant traveled before he collided with the plaintiff. *The investigating police officer testified that the defendant's vehicle was nine feet past the curb line.* The defendant testified he was three to four feet past the Fourth Street curb line and that traffic in the right-hand, eastbound lane was not interrupted by his presence there. Assuming that the plaintiff would turn right onto Bangor, the defendant was not watching to see whether the plaintiff had entered the intersection; rather, he was watching the Fourth Street, westbound traffic. Furthermore, on cross-examination, the defendant admitted that had he not moved beyond the curb line of Fourth Street, *the collision in question would not* have occurred. We agree with the trial court that the undisputed evidence conclusively established that the defendant failed to yield to the plaintiff.

In support of his position, the defendant relies on *Kiebach v. Luker*, 476 S.W.2d 46, 49–50 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ). In that case, the jury was asked whether the defendant entered an intersection when the car driven by the plaintiff "was approaching so closely as to constitute an immediate hazard." The jury answered in the affirmative. Then the jury was asked whether such action was negligence, to which the jury answered in the negative.

In *Kiebach*, the plaintiff maintained that, absent a legal excuse raised by the evidence, the *negligence* issue should not have been submitted for the jury's determination. The court overruled that contention and noted that the statutory duty to yield right-of-way is conditional and not absolute—that one could fail to yield right-of-way without necessarily being negligent in doing so. However, we do not believe that *Kiebach* stands for the proposition that the *act* of failing to yield right-of-way must be submitted to the jury when the undisputed evidence shows that the defendant stopped, observed plaintiff, and then proceeded before it was safe to do so without interfering or colliding with the plaintiff.

Next, we consider the defendant's "comment on the weight" challenge. As this court said in *Metal Structures Corp. v. Plains Textiles, Inc.*, 470 S.W.2d 93, 102 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.): "To constitute a comment on the weight of the evidence, the special issue must be worded so as to indicate an opinion by the trial judge as to the verity of the fact inquired about." Special issue number three inquired of the jury whether "the failure of Mark Kevin Hughett to yield to the vehicle driven by John Steven Dwyre was negligence?" Special issue number four inquired of the jury whether "the failure of Mark Kevin Hughett to yield to the vehicle driven by John Steven Dwyre was a proximate cause of the occurrence in question?" These issues do not indicate to the jury that in the opinion of the trial judge the defendant's failure to yield was negligence or a proximate cause of the collision.

Accordingly, we overrule the defendant's first five points of error.

In his sixth point of error, the defendant says the trial court erroneously admitted "the testimony of Dr. Robert Bateman pertaining to future consequences of any injury because it was not based upon reasonable medical probability but only possibility." By his eighth point, he maintains the trial court erred "in submitting Special Issue No. 15 pertaining to future medical expense when there was no probative evidence of any future medical expense." * In his ninth point, he claims the trial court erred "in entering judgment against this Defendant for future medical expenses because the probative evidence is insufficient to support the jury's findings to Special Issue No. 15 of $12,500.00 for future medical expense."

In response to special issue number fifteen, the jury found that $12,500 would be the necessary and reasonable doctor, medical, and hospital expenses which plaintiff will in reasonable probability incur in the future for treatment of the injuries suffered by him in the collision in question. In connection with his eighth and ninth points of error, the defendant basically contends that the evidence is insufficient because the plaintiff's medical opinion testimony pertaining to future treatment (i. e., back surgery) was not based on "reasonable medical probability" and that the doctor's testimony concerning the cost of such treatment was no more than an estimate given in "ballpark figures." In support of his position, the defendant relies upon *Fisher v. Coastal Transport Co.*, 149 Tex. 224, 230 S.W.2d 522 (1950), and subsequent cases. *See Powell v. Underbrink*, 499 S.W.2d 206 (Tex.Civ.App. —San Antonio 1973, no writ); *V. J. Keefe, Inc. v. Huddleston*, 459 S.W.2d 224 (Tex.Civ. App.—Beaumont 1970, no writ); *accord City of Rosenberg v. Renken*, 616 S.W.2d 292 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ).

Texas follows the "reasonable probability" rule for future damages for

personal injuries. *Powell*, 499 S.W.2d at 211; *V. J. Keefe, Inc.*, 459 S.W.2d at 229; and *Fisher.* Adhering to the "reasonable probability" rule, the Texas courts have also consistently held that the award of future medical expenses is a matter primarily for the jury to determine. No precise evidence is required. The jury may make its award based upon the nature of the injuries, the medical care rendered before trial, and the condition of the injured party at the time of trial. *Armellini Exp. Lines of Florida v. Ansley*, 605 S.W.2d 297, 311 (Tex.Civ.App.— Corpus Christi 1980, writ ref'd n.r.e.); *Thate v. Texas & P. Ry. Co.*, 595 S.W.2d 591, 601 (Tex.Civ.App.—Dallas 1980, no writ). *Pride Transport Co., Inc. v. Hughes*, 591 S.W.2d 631, 633 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.); *Jackson v. Associated Developers of Lubbock*, 581 S.W.2d 208, 214 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.); *City of Houston v. Moore*, 389 S.W.2d 545 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.); *Edens-Birch Lumber v. Wood*, 139 S.W.2d 881 (Tex.Civ.App.— Beaumont 1940, dism'd judg. corr.).

As stated in *Edens-Birch* at 887:

The jury had the right to take the nature and extent of her injuries and her progress toward recovery under the treatment she had received, and the reasonable cost of her medical and hospital treatment in the past, her physical condition at the time of the trial, and estimate the necessity for medical and hospital treatment in the future, and the reasonable cash value of such future medical treatment and hospital expense.

The pragmatic effect of *Edens-Birch* and its progeny is that to sustain a finding on future medical expenses, the plaintiff is not required to establish the future medical consequences of his injury by expert medical testimony grounded on "reasonable medical probability." Conversely, when there is expert medical testimony concerning the future consequences of the party's injuries, the jury is not necessarily bound by such testimony.

* The defendant's seventh point of error is cumulative to the eighth point and presents nothing further for appellate review.

In considering the legal sufficiency of the evidence to support the award of future medical expenses, we must examine the record for any probative evidence which supports the finding and disregard all contrary evidence. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). In reviewing the factual sufficiency of the evidence to support the jury finding, we must examine the entire record to determine if there is some probative evidence to support the finding and determine whether, in light of all the evidence, the finding is manifestly unjust. *Id.; In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951).

The evidence shows that defendant's vehicle struck the plaintiff when the plaintiff was riding his bicycle. The plaintiff tried to hold on to the bars but was thrown from the bike for some distance before landing on the ground and rolling and scraping his way to a stop. Plaintiff testified that his right lower calf was badly scraped; his left hip was badly bruised and scraped up; his right forearm and upper arm were scraped, bruised and bleeding; his left shoulder was painful; there was a small cut somewhere on his face; it was hard for him to walk; it was hard to stand; he had trouble supporting himself; and his right leg and left hip were in extreme pain. Upon being asked when he first noticed pain in his back, he testified: "To some extent, I noticed it at the time of the accident. But the first time I really noticed it was when I went to the hospital later on that day."

The plaintiff also testified that when he arrived at the hospital at Reese Air Force Base, it was impossible for him to lay down on the stretcher without severe pain. He further stated at trial, "That is really the first time I realized my back was in bad shape." At the hospital he was x-rayed and given pain medication. He then went home and went to bed.

He was advised by the doctors at Reese Air Force Base to see a specialist. The only specialist he could see on short notice was Dr. Bateman, who saw plaintiff 15–20 times in his office and at the University Hospital.

About a month after the accident in question, Dr. Bateman and the Air Force placed the plaintiff in the University Hospital. He stayed in the hospital for approximately five days, receiving medication, traction and therapy.

The plaintiff was also seen by members of the medical staff of the Veterans Administration, including general practitioners and orthopedic specialists. The specialists saw him because of his back injury, and he was hospitalized in the VA hospital in Amarillo because of that injury. At the hospital he was tested and given physical therapy. In all, he was seen between 10 and 20 times by medical specialists with the Veterans Administration. At the time of trial he was still receiving treatment from the Veterans Administration for his back injury and had been seen by VA doctors as recently as one week before trial. The VA doctors were also seeing him concerning his wrist.

The plaintiff further testified that he suffered intense pain for approximately two months following the accident, that he could not sleep due to the almost constant pain, that at the time of the trial he had a continuing dull pain in his low back, that he was still having trouble with his wrist, and that his legs at times gave out causing him to fall down for no apparent reason. At the time of trial he was in the process of being scheduled for extensive testing in the VA hospital in Albuquerque with respect to his back injury. Such hospitalization and testing would take from two to two-and-a-half weeks.

Dr. Bateman testified that he first saw the plaintiff in September of 1977. At that time the plaintiff was complaining of pain in his back and left wrist. An examination revealed muscle spasms in the lower part of plaintiff's back and a limited range of motion in his back, but x-rays of his back were within normal limits. Dr. Bateman was of the opinion that the conditions he found when he examined the plaintiff were caused by the automobile collision. On 26 September 1977, the plaintiff was having some muscle spasms and complained of

numbness in his lower extremities. On 5 October 1977, he appeared to have more back spasms, and they were somewhat worse than on the previous occasions.

In October 1977, the plaintiff was admitted to University Hospital for physical therapy. There he received treatment consisting of traction, heat application, massage, and back exercises. Dr. Bateman ordered a back brace for plaintiff, and plaintiff wore it in the hospital and later as needed. On 26 October 1977 and 30 November 1977, the doctor found muscle tightness in the plaintiff and thought he had a severe back sprain. In January 1978, Dr. Bateman found the plaintiff's condition to be worse. There were more muscle spasms in his back, and he was complaining again of low back pain.

On 19 March 1979, Dr. Bateman suggested an electromyogram study. In May of 1979, the plaintiff was still complaining to the doctor about falling down, and he appeared to have localized pain in his left hip. The doctor stated that from September 1977 until May 1978 the plaintiff's condition fluctuated considerably. On 5 February 1979, the doctor had found weakness of the extensors of the plaintiff's left foot and more muscle spasms and had decided on a lumbar myelogram. Concerning that myelogram, Dr. Bateman testified that "it looked like there was some pressure at the lower two levels of the lumbar vertebrae, that is, the 4–5 and the 5–1 level." He further stated that the same findings were made by the radiologist who performed the myelogram. After the myelogram, the plaintiff was seen by Dr. Bateman on 23 April 1979, 16 May 1979, 23 May 1979, 13 June 1979, 20 July 1979, and 10 August 1979.

The record shows that the accident in question occurred on or about 8 September 1977. The case was tried on the 16th, 17th and 18th days of April 1980. At the time of trial, the plaintiff was thirty-three (33) years of age. Prior to the accident he was in good health. He had approximately ten (10) years of active service in the United States Air Force and had attained the rank of Captain. At the time of the accident, he was on terminal leave from the Air Force. As a result of his injuries, he was granted a 20% service connected disability by the Veterans Administration. The evidence shows that he will need future medical care. In response to special issues twelve, thirteen and fourteen, the jury found $2,788 to be necessary and reasonable doctor, medical and hospital expenses incurred by the plaintiff as a proximate result of the injuries suffered by him in the collision in question. These findings are unchallenged on appeal.

Under the circumstances of this case, we conclude that the evidence showing the nature of the plaintiff's injuries resulting from the collision in question, the amount of the necessary and reasonable medical expenses rendered the plaintiff before trial, and his physical condition at the time of trial is legally sufficient to support the submission of the issue concerning future medical expense. Furthermore, we conclude that such evidence is legally and factually sufficient to support the jury's answer to the issue. The defendant's eighth and ninth points of error are overruled.

■ We next consider the defendant's sixth point of error. By this point, the defendant contends that the trial court erred in admitting the deposition testimony of the plaintiff's physician, Dr. Robert Bateman, "pertaining to future consequences of any injury because it was not based upon reasonable medical probability but only possibility." The record shows that Dr. Bateman examined and treated the plaintiff on numerous occasions because of pain in the plaintiff's back resulting from the incident in question. During the course of his deposition, Dr. Bateman was asked whether the plaintiff would require surgery in the future. Dr. Bateman testified that surgery might be required in order to ascertain exactly what was causing the pain in the plaintiff's back. Defendant objected on the grounds that the doctor was not testifying as to "reasonable medical probability," but only as to a "possibility." The objection was overruled. Subsequently, Dr. Bateman gave the jury "ballpark figures"

for the costs of any future treatment and corrective back surgery, in the amounts of $1,400–$2,100 and $5,000, respectively.

Dr. Bateman's testimony indicates that he did not know what was causing plaintiff's physical symptoms, that he believed that a ruptured or herniated disc might be involved, and that he wanted to put the plaintiff in the hospital for a week or two for therapy and a more thorough examination. Dr. Bateman added that if the plaintiff's condition did not improve during such a period, surgery would probably be necessary. Later, when asked if he felt that either hospital confinement with therapy or surgery would be necessary in the future, Dr. Bateman replied, "[W]hen I see him next, if he hasn't improved much, I would say yes." On cross-examination, the doctor did state that at this time he could not say "in reasonable medical probability" that the plaintiff would "have to have surgery."

In passing on the admissibility of evidence, the trial court is vested with discretion, *Luvual v. Henke & Pillot, Division of Kroger Co.,* 366 S.W.2d 831, 838 (Tex.Civ. App.—Houston 1963, writ ref'd n.r.e.); and in the absence of an abuse of such discretion, the trial court's determination will not be disturbed on appeal. *Whatley v. McKanna,* 207 S.W.2d 645, 651 (Tex.Civ. App.—Eastland 1948, writ ref'd n.r.e.).

It is true that Dr. Bateman's testimony did not include the words "reasonable medical probability," but our Supreme Court, in *Insurance Company of North America v. Myers,* 411 S.W.2d 710, 713 (Tex.1966), stated that reasonable probability "is determinable by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase." As the Supreme Court further stated in *Lenger v. Physician's General Hospital, Inc.,* 455 S.W.2d 703, 707 (Tex. 1970):

> the rule of "medical probability" *relates to the showing that must be made to support an ultimate finding of fact* and *not to the standard by which the medical expert must testify....* If the witness

were permitted to state his opinion only in terms of medical probability, moreover, the court and jury would have no opportunity to decide the form of his testimony. *In disposing of the present appeal, we consider all of Dr. Rainone's testimony ...*

In this instance, the ultimate fact to be established was the necessary and reasonable doctor, medical and hospital expenses which the plaintiff will in reasonable probability incur in the future for treatment of the injuries suffered by him in the collision in question. As we stated above, the plaintiff is not required to establish that ultimate fact by evidence grounded on reasonable medical probability only. *See Edens-Birch Lumber,* 139 S.W.2d 881. Considering the substance of Dr. Bateman's testimony as a whole, we conclude that the trial court did not abuse its discretion by admitting the challenged testimony.

■ The defendant's sixth point must be overruled for yet another reason. The matter complained of does not present reversible error. For the court's admission of the challenged evidence to constitute reversible error, we must be "of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Tex.R.Civ.P. 434. In this connection and in determining the defendant's legal and factual sufficiency challenges to the future medical issue, we specifically excluded from our consideration the challenged testimony pertaining to the back surgery and its costs and concluded that the other evidence in the record was legally and factually sufficient to support the jury's answer to the challenged issue. The defendant's sixth point of error is overruled.

■ In response to special issue number 16(c) the jury found that the plaintiff's loss of past earnings was $7,200; and in response to special issue number 16(d) the jury found that the plaintiff's loss of future earning capacity was $6,320. By points of

error eleven and thirteen, respectively, the defendant claims that there is no probative evidence to support the submission of these issues. By his twelfth and fourteenth points of error, respectively, the defendant challenges the factual sufficiency of the evidence to support the jury's answers to these issues.

The plaintiff testified that, prior to leaving the Air Force, he had completed all of the preparatory paperwork for entering the Air Force Reserve, that he intended to join the Reserve, that in the Reserve at the rank of Captain he would have earned $200–$300 per month, plus other benefits, but that, as the result of the injuries received in the collision in question, he could not pass the requisite physical examination to join the Reserve. As a Captain in the Reserve, he would have received $6,400–$9,600, plus other benefits, by the time of trial. He further stated that he would have served in the Reserve for twelve to fifteen years. With eight post-trial years in the Reserve as a Captain he would have received $19,200–$28,800, plus other benefits. We conclude that the evidence is legally sufficient to support the submission of special issue numbers 16(c) and 16(d); and we further conclude that the jury's answers to such issues are not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. The defendant's eleventh, twelfth, thirteenth and fourteenth points of error are overruled.

In his tenth point of error, the defendant maintains that the "trial court erred in admitting the testimony of the Plaintiff as to what rank he would have obtained if he had joined the Air Force Reserve because such evidence was from an unqualified witness and is so speculative and uncertain as to have no probative value." On direct examination, the plaintiff was asked whether he would have increased in rank in the Reserve, and he responded affirmatively. When asked what his rank would be after 12 or 15 years of service, he said he would be a Lt. Colonel. Counsel for the defendant objected to this question on the basis that the plaintiff was not qualified to testify about his probable rank, and the objection

was overruled. The plaintiff further stated that he would have received a higher rate of compensation as a Lt. Colonel.

In support of his position, the defendant asserts that "[w]ithout proper qualifications from an appropriate expert shown to possess the requisite expertise in the area, the testimony is not admissible." This court has held that the determination as to whether a witness is qualified to testify rests within the discretion of the trial court and that in the absence of a clear abuse of such discretion, the trial court's decision will not be disturbed on appeal. *Cooper v. Kruse-Reed, Inc.*, 554 S.W.2d 45 (Tex.Civ.App.—Amarillo 1977, no writ). With 10 years of active service, the plaintiff showed that he had a reasonable opportunity to familiarize himself with Air Force policy and procedure in this matter and that his knowledge concerning his probable rank after 12–15 years in the Reserve was such as to enable him to form an accurate opinion. In this light, appellant's objection more properly went to the weight of the testimony, not to its admissibility. Therefore, we conclude that the trial court did not abuse its discretion in this instance. Furthermore, the challenged testimony was not reasonably calculated to cause and probably did not cause the rendition of an improper judgment. *See* Tex.R.Civ.P. 434. The defendant's tenth point of error is overruled.

In points of error fifteen and sixteen, the defendant contends that the trial court erred in overruling his motion for a new trial because the court's implied finding that there was no jury misconduct is against the great weight and preponderance of the evidence and because such misconduct was conclusively established as a matter of law. The alleged jury misconduct is three-fold: (1) during deliberations, a juror asked whether the defendant carried liability insurance; (2) a juror mentioned that the defendant could declare bankruptcy if he could not pay the damages; and (3) the jurors arrived at a quotient verdict in assessing damages.

One who complains of jury misconduct must prove that an overt act of misconduct occurred, that it was material, and that, from the record as a whole, injury to the complaining party probably resulted. Tex.R.Civ.P. 327; *Strange v. Treasure City*, 608 S.W.2d 604, 606 (Tex.1980). The decision to grant or deny a motion for a new trial because of jury misconduct rests within the sound discretion of the trial court. The court's decision will not be overturned unless it clearly appears from the record that the court abused its discretion by disregarding the rights of the complaining party. *Lewis v. Yaggi*, 584 S.W.2d 487, 492–93 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.).

The jury foreman and four other jurors testified at the hearing on the defendant's motion for a new trial. Of those who could recall whether insurance was mentioned by a juror, each testified that the juror was promptly admonished not to consider insurance coverage and the matter was dropped. The casual mention of insurance which is promptly rebuked and then dropped is not so prejudicial as to require a new trial. *See Lemaster v. Chaney & Son Gas Co.*, 532 S.W.2d 720, 723 (Tex.Civ.App.—Eastland 1976, writ ref'd n.r.e.); *Walker v. Thompson*, 287 S.W.2d 556, 557 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.). We conclude that the trial court did not abuse its discretion in overruling the defendant's motion for a new trial because a juror had mentioned insurance coverage.

The jury foreman testified that another juror stated that if the awarded damages exceeded the defendant's maximum liability insurance coverage, then the defendant could declare bankruptcy. He testified that it was merely a comment. Only one other testifying juror recalled the incident. She testified that bankruptcy was casually mentioned, promptly rebuked, and dropped. From the testimony of these two jurors, we infer that the remark was made very soon after insurance was mentioned and was included with insurance in the admonishment. Thus, we conclude that the trial court did not abuse its discretion in overruling the defendant's motion for a new trial because bankruptcy had been mentioned.

The defendant also contends that a new trial should have been ordered because the jury determined the items of damages by a quotient verdict. The foreman's testimony in this regard is ambiguous. On direct examination by the defendant's counsel, the foreman stated that, because of the diverse conclusions concerning damages among the jurors, they each wrote an amount on a piece of paper and gave it to the foreman. The foreman and another juror added the figures and divided them by 12. The foreman testified that the results were exactly the same figures used in the verdict. However, on cross-examination, he testified that the averaged figures were only used as ballpark figures and that the jury worked from those figures. He stated that the jury never agreed to abide by the averaged results.

Each of the remaining four jurors testified that the averaged figures were merely used as starting points for deliberation and that the jury never agreed to be bound by the results. To establish jury misconduct in using a quotient verdict, the complaining party must show that the jurors agreed to abide by the results in advance. *Ruffo v. Wright*, 425 S.W.2d 663, 664 (Tex.Civ.App.—San Antonio 1968, no writ). Merely averaging figures as a guideline for deliberation, without more, is not sufficient to warrant a new trial. *Landreth v. Reed*, 570 S.W.2d 486, 491 (Tex.Civ.App.—Texarkana 1978, no writ). We therefore conclude that the jury's actions, under these facts, do not present harmful error. Finally, we conclude that the cumulative effect of the jury's actions does not require a new trial. Points of error fifteen and sixteen are overruled.

The judgment of the trial court is affirmed.