MARY'S OPINION HEADING 







                                                                                    NO. 12-03-00081-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
GENERAL SHELTERS OF TEXAS, LTD.,    §                 APPEAL FROM THE 124TH
FRED WULF MANAGEMENT, L.L.C. AND
JAMES CAMPBELL MANAGEMENT, L.L.C.,
APPELLANTS
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF



ALLEN HICKS,
APPELLEE                                                        §                 GREGG COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Allen Hicks, Appellee, sued his employer, General Shelters of Texas, Ltd., and two of its
affiliates, Fred Wulf Management, L.L.C., and James Campbell Management, L.L.C., Appellants
(collectively, GST), for damages proximately caused by General Shelters’ negligence in providing
him a defective vehicle in which he was required to perform his assigned tasks.


 The jury awarded
Hicks a total sum of $49,750.00. GST was entitled to a settlement credit of $25,740.64. The trial
court therefore rendered judgment for Hicks in the amount of $24,009.36, together with prejudgment
interest of $3,821.21. We affirm the judgment.
 
Background
            General Shelters employed Hicks as a truck driver. His duties included hauling, setting up,
and finishing out portable buildings within a 300-mile radius from General Shelters’ facility in
Center, Texas. According to Hicks, he spent “all day long” in his truck.
            In March 1979, Pegues-Hurst Motor Company performed repairs on Hicks’s assigned truck,
a 1998 Ford F-800. These repairs required the removal and reinstallation of the “dog house.” The
“dog house” is a rounded fiberglass housing that covers the back of the engine and separates the
engine from the cab interior. The “dog house” is normally insulated in order to prevent engine heat
from entering the cab. Pegues-Hurst, however, failed to install the “dog house” insulation.
            Hicks noticed that the cab became extremely hot, especially that part of the cab close to the
floorboard. Hicks complained to his supervisor about the problem. As instructed, Hicks took the
truck back to Pegues-Hurst on several occasions complaining of the extreme heat in the cab, but
blaming the problem on the air conditioner. Pegues-Hurst never succeeded in locating the problem
until the middle of September 1999. Nevertheless, Hicks continued to drive the truck through the
summer despite increasingly severe swelling, blistering, and burning of his feet and legs. Eventually
the swelling progressed to the point that the skin near his ankles “busted open,” the open wounds
oozing fluid.
            On October 16, 1999, after ten days of outpatient care resulted in no improvement, Hicks was
taken to the emergency room and admitted to the hospital. His condition was diagnosed as cellulitis
with possible sepsis, apparently referable to the recurring exposure to the extreme heat in the cab
next to the motor. He remained in the hospital for six days. He was able to return to work on
November 1, 1999.
            In the three years between his discharge and the trial, Hicks continued to experience pain and
swelling in his lower extremities every work-day evening. Two and one-half years after his injury,
Hicks still suffered some sensory loss in his legs, which a neurologist characterized as permanent.
            At the time of trial, Hicks could not tolerate heat near his feet, and his feet became swollen
every day. Hicks applied cortisone cream and wore compression stockings to alleviate the swelling. 
There was conflicting evidence regarding when Hicks’s injury first became manifest. Hicks did not
file his suit until June 12, 2001. Initially, on deposition, Hicks testified that he noticed the burning
and blistering of his legs in April or May of 1999. At trial, Hicks told the jury that he began to
experience the extreme heat “in the hot part of the summer” in 1999. Hicks underwent a Department
of Transportation-mandated physical examination on June 3, 1999. Hicks was required to undress
for the examination. The examiner noted no abnormality in Hicks’s lower extremities.
            GST moved for summary judgment based on its plea of limitations. The trial court denied
the motion, and the case proceeded to trial on the merits.
 
Limitations
            In its first issue, GST contends the trial court erred in not dismissing Hicks’s suit because
Hicks’s cause of action was barred by the statute of limitations. Immediately prior to trial, the trial
court denied GST’s motion for summary judgment based upon its affirmative defense of limitations. 
It did not move for directed verdict on this ground at the close of evidence, nor did it request jury
findings on the issue. GST did not include limitations as a basis for its motion for judgment
notwithstanding the verdict. Therefore, GST’s issue is an attempt to appeal the denial of a motion
for summary judgment.
            The Texas Supreme Court has routinely held that a denial of a motion for summary judgment
is interlocutory by nature and thus not appealable. Ackermann v. Vordenbaum, 403 S.W.2d 362,
365 (Tex. 1966). The only exception to the rule arises when both parties move for summary
judgment, and the court grants one motion for summary judgment and denies the other resulting in
a final judgment in the case rendered on a summary judgment motion. Tobin v. Garcia, 159 Tex.
58, 316 S.W.2d 396, 400 (1958). The final judgment in this case was not rendered on a summary
judgment motion, and, therefore, the denial of GST’s motion for summary judgment is not
reviewable.
            Moreover, as we read the record, there was conflicting evidence as to the time when Hicks
knew, or should have known, of his injuries. Since its defense of limitations was not established as
a matter of law, GST had the burden of obtaining jury findings supporting its plea of limitations. 
Tex. R. Civ. P. 279; Wichita Falls & Ok. Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, 85 
(1940); Miller v. Miles, 400 S.W.2d 4, 10 (Tex. Civ. App.–Tyler 1966, writ ref’d n.r.e.). GST’s
failure to request jury findings on the limitations question or to object to their omission from the jury
charge resulted in the waiver of the issue, and the issue must be deemed found in support of the
judgment. Id.
            Nothing is preserved for review. Appellants’ first issue is overruled.
 
Future Medical Expenses
            In its second issue, GST maintains that Hicks failed to offer any competent evidence that
there was a reasonable likelihood that he would incur future medical expenses. Therefore, it
contends, the trial court erred in denying its motion for judgment notwithstanding the verdict and
in rendering judgment on the jury’s award of $25,000 in future medical expenses.
Standard of Review
            The denial of a motion for judgment notwithstanding the verdict is reviewed under a legal
sufficiency standard. Navarette v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex. 1986). If
there is more than a scintilla of evidence to support the findings, the motion for JNOV was properly
denied. Mancorp v. Culpepper, 802 S.W.2d 226, 227-28 (Tex. 1990). More than a scintilla of
evidence exits when the evidence “rises to a level that would enable reasonable and fair minded
people to differ in their conclusions.” Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.
1995). Therefore, we must sustain the jury’s finding of future medical expense if it is supported by
more than a scintilla of evidence.
            Recovery for future medical expenses requires a showing that there is a reasonable
probability that such expenses will be incurred. Fisher v. Coastal Transport Co., 149 Tex. 224, 230
S.W.2d 522, 525 (1950); Fibreboard Corp. v. Pool, 813 S.W.2d 658, 681 (Tex. App.–Texarkana,
writ denied). Testimony of a “reasonable medical probability” by a medical expert is not a requisite
to recovery for future medical expenses. Blankenship v. Mirick, 984 S.W.2d 771, 778 (Tex.
App.–Waco 1999, pet. denied); Hughett v. Dwyre, 624 S.W.2d 401, 405 (Tex. App.–Amarillo 1981,
writ ref’d n.r.e.). An award for future medical expenses may be based upon the nature of the injuries,
the medical care rendered in the past, and the condition of the injured party at the time of trial. Id.
            GST complains that Hicks presented no competent expert testimony that there was a
reasonable probability that he would incur future medical expenses. The only expert testimony
offered by Hicks was that of neurologist Richard Ulrich. Although Dr. Ulrich testified that Hicks
had suffered permanent sensory loss in his feet and legs as a result of his injuries, GST emphasizes
that he also told the jury that he had not prescribed any medication, surgery, or physical therapy for
Hicks and that he had not scheduled any follow-up visits for Hicks, nor referred him to another
physician for further evaluation and treatment. While Dr. Ulrich was aware that Hicks was applying
cortisone cream to his feet and legs, GST argues that Dr. Ulrich never said the use of the cream was
necessary.
            GST argues that expert testimony is required to establish future medical expenses, although
it acknowledges that there are what it characterizes as a “handful of cases” holding that non-expert
testimony is sufficient. Our review of the cases, however, leads us to the conclusion that, while the
preferred practice is to have a physician testify as to the reasonable probability and cost of future
medical expenses, the great weight of authority requires only “that there be evidence in the record
of the reasonable value of past medical treatment and to establish the probable necessity of future
medical treatment.” Thate v. Tex. & Pac. Ry. Co., 595 S.W.2d 591, 601 (Tex. Civ. App.–Dallas
1980, writ dism’d) (cited by Appellants); see also Blankenship v. Mirick, 984 S.W.2d 771, 778
(Tex. App.–Waco 1999, pet. denied ) and the cases cited therein. In the often cited case of Hughett
v. Dwyre, the court stated the majority view, as follows:
 
Texas courts have also consistently held that the award of future medical expenses is a matter
primarily for the jury to determine. No precise evidence is required. The jury may make its award
based upon the nature of the injuries, the medical care rendered before trial, and the condition of the
injured party at the time of trial. 


Hughett, 624 S.W.2d at 405.
            Hicks entered the hospital in a wheelchair suffering from burns to his legs, severe cellulitis,
and possible sepsis caused by the constant burning and blistering of his lower extremities while
driving the defective truck. Almost three years later, Dr. Ulrich described the nerve damage in his
lower limbs as permanent. Dr. Ulrich knew that Hicks was using cortisone cream, noting in his
records that “at the time, I think he is content using over-the-counter medications to treat his leg
symptoms.” Hicks incurred past medical expenses totaling $11,797.05.
            At the time of trial, Hicks was forty-five years of age. He continued to experience daily
swelling of his legs, ankles, and feet that he attempted to alleviate with cortisone cream and
compression hose. He remained extraordinarily sensitive to heat around his lower extremities. He
used a tube-and-a-half of cortisone cream each week costing at that time $8.50 per tube. The support
hose cost $14.00 a pair. The record indicates that Hicks’s condition had not noticeably improved
during the year preceding trial, justifying the inference that further recovery was unlikely.
            Considering the nature of Hicks’s injuries, the past medical care he had received, and his
condition at trial, we conclude that there is enough evidence, amounting to more than a scintilla, to
support the jury’s award for future medical expenses. The evidence is legally sufficient. The trial
court did not err in denying GST’s motion for JNOV. GST’s second issue is overruled.
 
Disposition
            Having overruled the issues presented, we affirm the judgment of the trial court.
 
 
 
                                                                                                    BILL BASS 
                                                                                                            Justice
 
 
Opinion delivered June 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.

.















(PUBLISH)